UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED HEBREW CONGREGATION OF ST. LOUIS, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CASE NO: 4:20CV892 HEA<br>) |
| SELECTIVE INSURANCE COMPANY OF AMERICA, | )<br>)<br>) |
| Defendant. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss, [Doc. No. 18). Plaintiff opposes the Motion. For the reasons set forth below, the motion will be granted.

## Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 570 (2007)). A "formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it

asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

## Facts and Background[1]

Plaintiff is a religious organization consisting of a congregation of approximately 900 member families. The Amended Complaint alleges that besides its members' annual dues and donations, it depends for its income on fees and payments for certain specific services, such as an early childhood center, summer camp and Religious School, a catering service, gift shop purchases, an annual gala dinner, rental of the building to outsiders, and other sources.

Plaintiff purchased a business insurance policy from Defendant. The policy promises to indemnify the policyholder for actual business losses incurred when business operations are involuntarily suspended, interrupted, or curtailed because of direct physical loss of or damage to its property.

In exchange for premiums paid by Plaintiff to Defendant, Plaintiff obtained a Commercial Policy, Policy No. S 1793099, covering a Policy Period from July 1, 2019 to July 1, 2020 ("The Policy"). The Policy contains an index of various "Forms and Endorsements [that] are applicable to the Commercial Property Coverage Part." One of those Forms is "Business Income Coverage with Extra

---

[1] The recitation of facts is set forth as provided in the Amended Complaint. For the purposes of the Motion to Dismiss, the Court assumes the truth of the factual allegations.

2

Expense," shown as having the Form number CP 00 30 10 12. *Id.* 57. The "Business Income (and Extra Expense) Coverage Form," Form CP 00 30 10 12 (Ex. A at 93-101), provides coverage for lost Business Income and Extra Expense. With respect to lost Business Income, it states:

> We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

The Policy's Commercial Property Coverage Declaration states that Business Income coverage includes the "Actual Loss" with a waiting period of 72 hours.

The Policy's Declaration containing the Schedule of Location shows that The Policy includes three premises: 13788 Conway Rd, Saint Louis, MO 63141 (Plaintiff's main building, containing the sanctuary and school building), 7855 Canton Ave, Saint Louis, MO 63130 (United Hebrew Cemetery), and 13742 Conway Rd., Saint Louis, MO 63141 (vacant land east of the main building).

Plaintiff was required to shut down its operations due to the COVID-19 pandemic. Its revenues decreased substantially since it could not continue its revenue producing activities, such as childcare services, gala fund raisers, gift shop, etc. Plaintiff submitted a claim to Defendant, its insurer. The claim was

3

rejected. Admittedly, there has been no physical damage to any of Plaintiff's property.

Plaintiff brought this action based for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory and injunctive relief.

Defendant moves to dismiss for failure to state a cause of action.

## Discussion

Defendants argue that the Policy excludes coverage for a "virus," the ordinance or law exclusion in the policy bars recovery since the shutdown was mandated by St. Louis County, and Plaintiff has not suffered a "direct physical loss."

On July 2, 2021, the Eighth Circuit Court of Appeals decided a strikingly similar case. In *Oral Surgeons, PC v. Cincinnati Insurance Company*, the Court determined that a business interruption policy was unambiguous and required actual physical damage.

> We must construe the policy to give effect to the intent of the parties. *Boelman v. Grinnell Mut. Reinsurance Co.*, 826 N.W.2d 494, 501 (Iowa 2013). Intent is determined by the language of the policy itself, unless there is ambiguity. Id. Ambiguity exists "[o]nly when policy language is subject to two reasonable interpretations." *T.H.E. Ins. Co. v. Est. of Booher*, 944 N.W.2d 655, 662 (Iowa 2020); see *Cairns v. Grinnell Mut. Reinsurance Co.*, 398 N.W.2d 821, 824 (Iowa 1987) ("Ambiguity exists if, after the application of pertinent rules of interpretation to the face of the instrument, a genuine uncertainty results as to which one of two or more meanings is the proper one." (cleaned up)). "Generally speaking, the plain meaning of the insurance contract prevails." *Est. of Booher*, 944 N.W.2d at 662.

> The policy here clearly requires direct "physical loss" or "physical damage" to trigger business interruption and extra expense coverage. Accordingly, there must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction. See *Milligan v. Grinnell Mut. Reinsurance Co.*, No. 00-1452, 2001 WL 427642, at *2 (Iowa Ct. App. Apr. 27, 2001) (concluding that "direct physical loss or damage" "unambiguously referred to injury to or destruction of" insureds' property and finding support for the conclusion "in the fact that the loss or destruction must be physical in nature"); see also *The Phx. Ins. Co. v. Infogroup, Inc.*, 147 F. Supp. 3d 815, 823 (S.D. Iowa 2015) ("The common usage of physical in the context of a loss therefore means the loss of something material or perceptible on some level."); 10A Steven Plitt et al., Couch on Insurance § 148:46 (3d ed. 2021) ("The requirement that the loss be 'physical' ... is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." (footnotes omitted)). The policy cannot reasonably be interpreted to cover mere loss of use when the insured's property has suffered no physical loss or damage. *See Pentair, Inc. v. Am. Guar. & Liab. Ins. Co.*, 400 F.3d 613, 616 (8th Cir. 2005) ("Once physical loss or damage is established, loss of use or function is certainly relevant in determining the amount of loss, particularly a business interruption loss."); *Infogroup*, 147 F. Supp. 3d at 825 ("While a loss of use may, in some cases, entail a physical loss, the Court does not find 'loss of use' and 'physical loss or damage' synonymous.").

*Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, No. 20-3211, 2021 WL 2753874, at *2 (8th Cir. July 2, 2021).

The same analysis applies to this action. Since Plaintiff's property was not physically damaged, the "physical damage or loss" exclusion precludes recovery. Ergo, the Amended Complaint fails to state a cause of action.

> The complaint pleaded generally that Oral Surgeons suspended non-emergency procedures due to the COVID-19 pandemic and the related government-imposed restrictions. The complaint thus alleged no facts to

show that it had suspended activities due to direct "accidental *physical* loss or accidental *physical* damage," regardless of the precise definitions of the terms "loss" or "damage." We reject Oral Surgeons's argument that the lost business income and the extra expense it sustained as a result of the suspension of non-emergency procedures were "caused by direct 'loss' to property."

The policy clearly does not provide coverage for Oral Surgeons's partial loss of use of its offices, absent a showing of direct physical loss or physical damage. "[W]here no ambiguity exists, we will not write a new policy to impose liability on the insurer." *Nat'l Sur. Corp. v. Westlake Invs., LLC*, 880 N.W.2d 724, 734 (Iowa 2016); see *Boelman*, 826 N.W.2d at 501 ("We will not strain the words or phrases of the policy in order to find liability that the policy did not intend and the insured did not purchase.")

*Id.*

## Conclusion

The Amended Complaint alleges no facts to show that its economic losses were due to direct *physical* damage or loss regardless of the lack of specific definition of the terms. The Amended Complaint fails to state any claims upon which relief may be granted.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. 18] is **GRANTED**. Plaintiffs' claims are **DISMISSED** with prejudice. An appropriate Order of Dismissal is filed herewith.

Dated this 7th day of July, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE